UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW LYNN WALTERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 1212 CAS (ACL) |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Andrew Lynn Walters for a Writ of

Habeas Corpus under 28 U.S.C. § 2254.   This cause was referred to the undersigned United States

Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**I.  Procedural History**

Walters is incarcerated at the Southeast Correctional Center in Charleston, Missouri,

pursuant to the Sentence and Judgment of the Circuit Court of Jefferson County, Missouri.

(Respt's Ex. B at 66-68.)

On September 14, 2010, a jury found Walters guilty of one count of first degree statutory

rape, three counts of first degree statutory sodomy, one count of first degree child molestation, one

count of second degree statutory rape, two counts of second degree statutory sodomy, and one

count of second degree child molestation.[1]   (Respt's Ex. A at 413.)   The court sentenced Walters

to a total of twenty-four years imprisonment.   *Id.* at 463-64.

In his direct appeal of his convictions, Walters first argued that the trial court erred in

overruling his motion for judgment of acquittal at the close of all the evidence, and in entering

---

[1]The jury found Walters not guilty as to one count: Count VIII, second degree statutory sodomy.
(Respt's Ex. A at 420.)

judgment on the verdict of guilty on Count VI, second-degree statutory sodomy, because the evidence was insufficient to establish his guilt.   (Respt's Ex. C at 17.)   Walters next argued that the evidence was insufficient as to Count X, second degree child molestation.   *Id.* at 22.   In his third point on appeal, Walters argued that the trial court plainly erred in failing to *sua sponte* instruct the jury to disregard the state's argument that Walters failed to testify in his own defense. *Id.* at 25.   On February 21, 2012, the Missouri Court of Appeals reversed and remanded the judgment and sentence of the trial court in part, as to Counts VII and X, and affirmed the judgment and sentence of the trial court as to the other counts.   (Respt's Ex. E.)

Walters filed a *pro se* motion for post-conviction relief under Rule 29.15.   (Respt's Ex. G at 4-9.)   After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed.   *Id.* at 15-37.   The amended motion raised the following ineffective assistance of counsel claims: (1) trial counsel failed to investigate and call Walters' parents to testify at trial; and (2) trial counsel failed to call Walters to testify at trial.   *Id.*   The motion court denied Walters' amended motion after holding an evidentiary hearing.   *Id.* at 41-46.

In his appeal from the denial of post-conviction relief, Walters raised the same claims he had alleged in his post-conviction relief motion.   (Respt's Ex. H.)   The Missouri Court of Appeals affirmed the decision of the motion court.   (Respt's Ex. J.)

Walters filed the instant Petition on July 7, 2014.   (Doc. 1.)   He raises the following grounds for relief: (1) the trial court plainly erred by failing to *sua sponte* instruct the jury to disregard the state's comments during closing argument that Walters did not testify at trial; (2) trial counsel was ineffective for failing to investigate and call Walters' parents to testify; (3) trial counsel was ineffective for failing to permit Walters to testify; (4) trial counsel was ineffective for failing to strike six venirepersons for cause or request a mistrial; and (5) direct appeal counsel was ineffective for not arguing that there was insufficient evidence to support any conviction.

On October 24, 2014, Respondent filed a Response to Order to Show Cause.   (Doc. 13.)   Respondent argues that Grounds One, Four, and Five are procedurally defaulted, and all of Walters' claims fail on their merits.

## II.   Facts[2]

Victim was born on April 20, 1991.   Walters was married to Victim's aunt at all relevant times.   Between 2003 and 2005, Victim was a frequent visitor at Walters' house to see her aunt and cousins.   Victim also lived at Walters' house for three to six months during these years.

In 2003, when Victim was twelve years old, Walters began sexually abusing her.   On one occasion, Victim and Walters were watching a movie in Walters' living room, when a sexually explicit scene came on.   Victim stated that she thought it was gross, and Walters replied, "It's not gross once you do it."   Walters then left the room, returned with a vibrator, which he turned on and placed between Victim's legs.   Around this time, Walters began smacking Victim on the butt and making comments about how he liked her chest.

The following weekend, Victim was visiting Walters' home.   At some point, she and Walters were alone on the couch.   Walters moved closer to her, unfastened her shorts, and put his finger into her vagina.   Walters ignored Victim's request to stop.   When Walters eventually stopped of his own accord, Walters told her that if she told anyone about what he did, she would lose her family.

On occasions during 2003-2004, when Victim was twelve or thirteen years old, Walters would place his hands on her chest both over and under her clothing.   While doing so, Walters would tell her how nice her breasts were and how much he liked them.   Walters ignored Victim's requests for him to stop this behavior.   On one occasion during this same time frame, Walters told

---

[2]The Court's recitation of the facts is taken form the decision of the Missouri Court of Appeals on direct appeal.   (Respt's Ex. E at 1-3.)

Victim to go into the bedroom and remove her pants.   Victim complied, and Walters followed her in and then put a condom on his penis and advised Victim that "it was going to hurt."   Walters then lay on top of Victim, placed his penis into her vagina, and had sexual intercourse with her. Walters continued to have intercourse with Victim until she was seventeen years old.

Also in 2003-2004, when Victim was twelve to thirteen years of age, and once after she turned fourteen years old, Walters forced her to masturbate him.   Walters also placed his penis in Victim's mouth prior to her turning fourteen years old.

In September 2008, when Victim was seventeen, she was living with her father.   She and her father had a fight, and as a result Victim moved in with her aunt and Walters.   Walters again touched her, put his finger in her vagina, and had sexual intercourse with her.   Victim lived with her aunt and Walters until March 17, 2009, when she left to move in with her mother.

The State charged Walters with ten offenses, each count corresponding to a specific discrete sexual act alleged to have been performed by him upon Victim within the date ranges set out in the charge.   From April 20, 2003 to April 19, 2005, Victim was twelve and thirteen years of age, but not yet fourteen.   From April 20, 2005 to April 19, 2008, Victim was between fourteen and sixteen years of age, but not yet seventeen.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Procedurally Defaulted Grounds

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim.

5

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004).   A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition.   *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)).   Claims that are not fairly presented to the state courts are procedurally defaulted.   *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations.   *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).   A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986).   "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable.   *Id.*   If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted.   *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

Respondent argues that Grounds One, Four, and Five are procedurally defaulted.

### A.      Ground One

Respondent contends that Walters' first ground for relief—that the trial court plainly erred by failing to *sua sponte* instruct the jury to disregard the state's comments during closing argument that Walters did not testify at trial--is procedurally barred because he did not preserve the claim for review on direct appeal, and the Missouri Court of Appeals reviewed for plain error only.

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire,* 675 F.3d 1082, 1086-87 (8th Cir. 2012) (quotation marks omitted).   "In Missouri, a claim must be presented at each step of the judicial process to avoid default." *Id.* at 1087.

Until recently, there was a split within the Eighth Circuit regarding whether plain-error review by a state appellate court waived a procedural default, and courts were permitted to choose which line to follow. *Clark v. Bertsch,* 780 F.3d 873, 876 (8th Cir. 2015) (*comparing Toney v. Gammon,* 79 F.3d 693, 699 (8th Cir. 1996) and *Hayes v. Lockhart,* 766 F.2d 1247, 1253 (8th Cir. 1985) (state court's plain-error review does not excuse procedural default) *with Thomas v. Bowersox,* 208 F.3d 699, 701 (8th Cir. 2000), *Bannister v. Armontrout,* 4 F.3d 1434, 1445 n. 6 (8th Cir. 1993) and *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir. 1989) (state court's plain-error review permits federal review)).   In 2011, the Eighth Circuit, sitting *en banc,* directed that, in the event of an intra-circuit split, future panels were to "determine and follow the earliest precedent." *Clark*, 780 F.3d at 876 (citing *Mader v. United States,* 654 F.3d 794, 800 (8th Cir. 2011)).   The Court then determined that the earliest controlling panel opinion on the effect of plain-error review is *Hayes,* which held that such claims are procedurally defaulted and unreviewable, absent cause and prejudice. *Id.* (*quoting Hayes,* 766 F.2d at 1253).

The Missouri Court of Appeals found that Walters did not preserve the claim raised in Ground One for review by failing to object at trial or in his motion for new trial, and limited their review to plain error review.   (Respt's Ex. E at 9-11.)   Walters does not attempt to excuse his procedural default on the basis of cause and prejudice or manifest injustice.   Thus, Walters' claim in Ground One is procedurally defaulted.

7

Walters' claim also fails on the merits.   He contends that the trial court plainly erred by failing to *sua sponte* instruct the jury to disregard the state's comments during closing argument that Walters did not testify at trial.

The prosecutor argued as follows during closing argument:

> There really aren't any real issues here.   You either believe [Victim] or you don't. That's the bottom line.   Because there isn't anything else.   And there is never going to be anything else.   So you either believed her or you don't.   And ladies and gentlemen, she is worthy of your belief.   She is worthy of belief.

(Respt's Ex. A at 402-03.)

The Missouri Court of Appeals, reviewing for plain error, held that the prosecutor's remarks were "better characterized as commenting on the State's own evidence, in the form of Victim's testimony, as opposed to commenting on Appellant's failure to testify."   (Respt's Ex. E at 10.)

The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law.   The United States Supreme Court has held that a prosecutor's direct reference to an accused's failure to testify violates the Fifth Amendment to the Constitution.   *Griffin v. California*, 380 U.S. 609, 612-15 (1965).   "[The] Supreme Court has never clearly established, [however], that a prosecutor may not comment on the evidence in a way that indirectly refers to the defendant's silence.   *Edwards v. Roper*, 688 F.3d 449, 460 (8th Cir. 2012); *cert. denied*, 134 S.Ct. 58 (2013).   In this case, the prosecutor's comment did not directly reference Walters' failure to testify.   The remark could more accurately be described as a reference to the "clarity and strength of the state's evidence, and not as a constitutionally prohibited reference to [Walters]' silence."   *Herndon v. Norman*, No. 4:09-CV-1889 TCM, 2013 WL 1282250 at *15 (E.D. Mo. Mar. 26, 2013).   In addition, the jury was properly instructed that they could draw no adverse inference from Walters' decision not to testify.   (Respt's Ex. A at

8

388.)   Thus, the undersigned recommends that Ground One be dismissed.

### B.    Ground Four

Respondent argues that the ineffective assistance of trial counsel claim raised in Ground Four for failing to strike six venirepersons for cause or request a mistrial is procedurally defaulted because Walters did not present this claim at all to the state courts.

Walters contends that his procedural default of this claim should be excused because his post-conviction counsel was ineffective in failing to raise this claim.

The United States Supreme Court has held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan,* 132 S. Ct. 1309, 1315 (2012).   To meet this narrow exception for establishing cause, Walters must demonstrate that post-conviction counsel was ineffective under the standards of *Strickland.*   Therefore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."   *Martinez,* 132 S. Ct. at 1318.

Walters claims that trial counsel was ineffective for failing to strike six venirepersons for cause or request a mistrial.   Walters contends that the venirepersons were biased because they indicated they had relatives who had been molested.

To prevail on a claim of ineffective assistance of counsel for the attorney's failure to strike a biased juror, a federal habeas petitioner must show that the juror was actually biased against the petitioner.   *Goeders v. Hundley,* 59 F.3d 73, 75 (8th Cir. 1995) (discussing a juror's bias as an aspect of the prejudice element of an ineffective assistance of counsel claim) (citing *Smith v. Phillips,* 455 U.S. 209, 215 (1982)).   In order to prove actual bias, the habeas petitioner must

"point to clear and convincing evidence that [the juror in question] made an impermissible affirmative statement that is unequivocal." *Munt v. Grandlienard*, 829 F.3d 610, 615 (8th Cir. 2016).

In this case, Walters has presented no such evidence.   The record reveals that the jurors cited by Walters (Marc Vaughn, Kris Woddail, Nancy Jenkinson, Frank Blair, Diane Sauer, and Loraine Batch), all indicated that they had family members who had been molested.   (Respt's Ex. A at 58-59, 60-62, 52-54, 70-71, 78-79, 81-82.)   These individuals, however, also testified that they could be fair and impartial and follow the court's instructions.   *Id.*

Having found that the underlying ineffective assistance of trial counsel claim is not "substantial" and does not have "some merit" as required by *Martinez*, Walters has not established cause to avoid the procedural bar preventing consideration of the merits of this claim. Consequently, the undersigned recommends that Ground Four be dismissed.

### C.    Ground Five

Respondent argues that Ground Five wherein Walters alleges that direct appeal counsel was ineffective for not arguing that there was insufficient evidence to support any conviction is procedurally defaulted because Walters did not present this claim to the state courts during the post-conviction process.   Walters contends that his default should be excused because post-conviction counsel was ineffective in failing to raise this claim.

The Eighth Circuit expressly rejected the argument that an error by post-conviction counsel served as cause to excuse a procedurally defaulted claim of ineffective appellate counsel, stating, "[w]e ... decline to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal." *Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014).   *Martinez* applies to instances where ineffective post-conviction counsel has caused a petitioner to procedurally default an ineffective assistance of *trial counsel* claim, not an ineffective assistance of *appellate*

10

*counsel* claim.   *Seen Dansby*, 766 F.3d at 833 (emphasis added).   Thus, Walters cannot use the ineffectiveness of his post-conviction counsel to serve as cause for his default of the ineffective assistance of direct appeal counsel claim.

Walters' claim also fails on its merits.   On direct appeal, counsel successfully argued that there was not sufficient evidence from which a reasonable juror could find Walters guilty beyond a reasonable doubt of second-degree statutory sodomy as set out in Count VII, or second-degree child molestation as set out in Count X.   (Respt's Ex. E at 6-9.)   The court found that the state offered sufficient evidence to support Walters' convictions of first-degree sodomy prior to victim's fourteenth birthday (Count II) due to Victim's testimony that Walters placed his finger in her vagina during this time period, but the state failed to introduce evidence of another occurrence of this conduct when she was younger than seventeen to support a conviction of second-degree sodomy on Count VII.   *Id.* at 7.   Similarly, the court found that the state introduced sufficient evidence to support Walters' conviction of first-degree child molestation based on his act of placing his hands on Victim's breasts prior to her attaining the age of fourteen years (Count V), but there was no evidence of an occurrence where Walters put his hands on Victim's breasts when she was younger than seventeen to support his conviction of second-degree child molestation as set out in Count X.   *Id.* at 8-9.

"Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers."   *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee v. Groose*, 110 F.3d 13346, 1352 (8th Cir. 1997); *Pollard v. Delo*, 28 F.3d 887, 889 (8th Cir. 1994)).   "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel."   *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations

11

omitted).   Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal."   *Cole*, 2011 WL 1258249, at *14 (citations omitted).

Walters fails to demonstrate appellate counsel was ineffective.   Rather, the record reveals that counsel competently winnowed the issues on appeal, resulting in the reversal of two convictions not supported by the evidence.   There is no indication that the remaining charges would be subject to reversal on these grounds, as Victim testified that Walters committed the requisite sexual acts during the charged time periods.

Accordingly, the undersigned recommends that Ground Five be dismissed.

## V.   Remaining Ineffective Assistance of Counsel Claims

In Grounds Two and Three, Walters raises ineffective assistance of counsel claims that were properly presented to the state courts.

In order to state a claim of ineffective assistance of trial counsel, Walters must meet the *Strickland* standard: he must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance.   *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney.   *Id.*   To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold."   *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

## A.    Ground Two

12

In his second ground for relief, Walters argues that trial counsel was ineffective for failing to investigate and call Walters' parents, Larry Walters and Teresa Bowles, to testify on his behalf. Walters contends that these witnesses would have testified that Walters was living in his father's house from March 2005 until November 2005, and that his mother was living with Walters' wife (Victim's aunt), and neither witness saw Victim with Walters.

Walters raised this claim in his post-conviction motion and in his appeal from the denial of post-conviction relief.   The Missouri Court of Appeals held as follows, in relevant part:

> Here, trial counsel was not ineffective for failing to call Movant's mother or father to testify because their testimony would have been cumulative.   Failure to put on cumulative witnesses is not ineffective assistance of counsel.   *Harris v. State*, 400 S.W.3d 896, 899 (Mo. App. E.D. 2013).   Moreover, the testimony would not have provided Movant a viable defense.   The charged time frame for the first five counts was between April 2003, and April 2005, and the victim testified that the charged acts occurred when she was twelve or thirteen, between 2003 and 2005.   The other acts occurred when she was fourteen, fifteen and sixteen, between 2005 and 2008.   Movant's mother's and father's testimony could not demonstrate that it was impossible for Movant to have committed the crimes of which he was convicted.
> Because Movant's mother's and father's testimony was cumulative and would not have provided a viable defense, trial counsel was not ineffective for failing to call them to testify.   The trial court did not clearly err in denying Movant's claim.

(Respt's Ex. J at 6.)

The decision of the Missouri Court of Appeals did not involve an unreasonable application of *Strickland* to the facts of this case.   With regard to the first prong, the court reasonably found that testimony of both witnesses was cumulative, because Walters' wife testified as to when Walters was and was not living in the family home.   (Respt's Ex. A at 309.) At the hearing on the motion for post-conviction relief, trial counsel testified that he did not call Walters' parents because the charges in the case "were specific to things that happened in Andy Walters' home, and [sic] I felt the best testimony to that would come from his wife and his stepdaughter, who lived in the home.   And Cynthia Walters did testify that he was not living in

13

the marital home for about a year." (Respt's Ex. F at 9.) Counsel testified that any testimony

from other persons would have been cumulative. *Id.* at 14-15. Trial counsel is not ineffective

for failing to adduce cumulative evidence. *See Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir.

2006). *See also Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002) ("We conclude that failure

to present cumulative evidence is neither contrary to nor an unreasonable application of the

governing principles found in *Strickland*.").

     With regard to the second *Strickland* prong, Walters cannot demonstrate that counsel's

failure to call these witnesses resulted in prejudice to him. Testimony from Walters' father that

Walters lived with him for only a portion of the charged time frame would not have provided him

with a viable defense. The testimony of Walters' mother suffers from the same flaw. Ms.

Bowles testified at the evidentiary hearing that she lived with Walters' wife for a period

beginning in June 2005 when Walters was living with his father, and that she never saw Walters

with the Victim during this time. (Respt's Ex. F at 19.) This testimony would not show that

Walters never had an opportunity during the entire charged period to commit the crimes. Thus,

Walters cannot show that there is a reasonable likelihood that the outcome of the trial would have

been different had his parents been called as witnesses.

     Accordingly, the undersigned recommends that Ground Two be denied.

## B.    Ground Three

     In Ground Three, Walters argues that trial counsel was ineffective for failing to permit

Walters to testify.

     Walters raised this claim in the post-conviction proceedings. The motion court

concluded that Walters' decision was made voluntarily and with full knowledge of his right to

choose whether to testify. (Respt's Ex. G at 45.) The Missouri Court of Appeals affirmed the

decision of the motion court. (Respt's Ex. J at 7.) The court stated:

14

Movant maintains that he only decided not to testify because he relied on trial counsel's advice, but this is insufficient to show that counsel was ineffective. The motion court was not required to believe Movant's testimony that trial counsel had advised him not to testify.   At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant.

(Respt's Ex. J at 8-9.)

The following exchange occurred at the close of the defense case:

THE COURT:   Mr. Walters, your attorney has announced that he is presenting no further witnesses.   And you have not testified.   And you need to answer aloud. Do you understand that it is your right to testify in this case, if you wish to do so?
THE DEFENDANT:   Yes.
THE COURT:   All right.   And it is not [defense counsel]'s right to tell you not to?
THE DEFENDANT:   Yes.
THE COURT:   Do you understand that?   I would expect you to consider his advice in that regard in making that decision, but it must be your decision.
THE DEFENDANT:   Okay.
THE COURT:   Do you understand that?
THE DEFENDANT:   Yes.
THE COURT:   And you understand the Constitution of the United States and under the laws of the State of Missouri, I will, if requested, give the jury an instruction that they can draw no adverse inference from the fact that you did not testify.   As to whether that instruction means a lot, I can't say.   But that's what I will do if your attorney requests it, I will give that instruction.
THE DEFENDANT:   Yes.
THE COURT:   Do you understand that?   Understand everything about the case, understanding that you do have an absolute right to testify:   Do you wish to testify in this case?
THE DEFENDANT:   No.
THE COURT:   All right.   And are you sure of that?
THE DEFENDANT:   Yes.
THE COURT:   And you understand if you are convicted and you come back in this courtroom and claim that your attorney told you not to testify, and that it's all his fault, that that plea will fall on deaf ears?
THE DEFENDANT:   Yes.
THE COURT:   Because you—it is your decision, and yours alone.   And again, I would not expect you not to listen to Mr. O'Shea's advice in that regard.   In fact, it would be foolish of you not to consider his advice, but it is your decision.
THE DEFENDANT:   Yes.
THE COURT:   And understanding that, is it still your decision that you will not testify in this case?
THE DEFENDANT:   Yes.

15

(Respt's Ex. A at 372-74.)

At the evidentiary hearing, Walters testified that he and his attorney "were on the same page" at the beginning of the trial that Walters would testify.   (Respt's Ex. F at 43.)   Walters stated that he nonetheless waived his right to testify on the record after his two witnesses testified because "the Judge told me that he recommended doing what my attorney tells me to do, but it's my decision to turn around and to testify on my behalf or not."   *Id.*   Walters testified that he understood it was ultimately his right to testify and that he could testify against his attorney's advice.   *Id.* at 43-44.

A defendant in a criminal case has a constitutional right to testify on his or her own behalf. *Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987).   Moreover, the defendant "has the ultimate authority" to decide "whether to ... testify in his or her own behalf."   *Jones v. Barnes,* 463 U.S. 745, (1983) (citing *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1 (1977) (Burger, C.J., concurring)).

Walters' exchange with the trial court regarding his decision not to testify was clear and unequivocal.   *See Smith v. Lockhart,* 921 F.2d 154, 157 (8th Cir. 1990) ("Solemn declarations in open court carry a strong presumption of verity") (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)).   There is nothing to indicate any conduct or statements by Walters' counsel adversely affected Walters' decision not to testify.   Without more, counsel may not be deemed ineffective for abiding by Walters' decision not to testify.   The record supports the state appellate court's findings, and its decision is not an incorrect or unreasonable application of *Strickland.*

Accordingly, the undersigned recommends that Ground Three be denied.

## VI.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues

16

are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Walters has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Petition of Andrew Lynn Walters for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have until July 20, 2017 to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of July, 2017.